1  Colin H. Murray, State Bar No. 159142
   **Baker & McKenzie LLP**
2  12544 High Bluff Drive, Third Floor
   San Diego, CA 92130-3051
3  Telephone: +1 858 523 6200
   Facsimile: +1 858 259 8290
4  Email: Colin.Murray@bakermckenzie.com

5
   Attorneys for Defendant
6  Life Partners, Inc.

7

8                  UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10                       WESTERN DIVISION

11 MARILYN STEUBEN, on behalf of        **Case No. CV11-10212 PSG (CWx)**
   herself and all other California citizens
12 similarly situated,                  **DEFENDANT'S MEMORANDUM
                                         OF POINTS AND AUTHORITIES
13          Plaintiff,                   IN SUPPORT OF MOTION TO
                                         DISMISS PLAINTIFF'S CLASS
14      v.                               ACTION COMPLAINT
                                         PURSUANT TO FED. R. CIV. P.
15 LIFE PARTNERS, INC.,                  12(b)(6) AND 9(b)**

16          Defendant.                   Date:     March 5, 2012
                                         Time:     1:30 p.m.
17                                       Judge:    Hon. Philip S. Gutierrez
                                         Courtrm:  880-Roybal
18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      STATEMENT OF ISSUES TO BE DECIDED.................................................1

II.     STATEMENT OF FACTUAL ALLEGATIONS.........................................1

III.    LEGAL STANDARDS FOR DISMISSAL...................................................4

IV.     LEGAL AUTHORITIES IN SUPPORT OF DISMISSAL OF CLAIMS......5

        A.      Plaintiff Fails to Allege an Actionable Breach of Contract by LPI......5

        B.      Plaintiff Fails to State a Claim for Breach of Fiduciary Duty ............11

                1.      LPI did not Owe a Fiduciary Duty to Optimize Premiums......12

                2.      The Economic Loss Rule Precludes Plaintiff's Breach of
                        Fiduciary Duty Claim .................................................................13

        C.      Plaintiff Fails to State a Claim Under Cal. Bus. & Prof. Code
                § 17200 or § 17500 .....................................................................14

        D.      Even if Plaintiff had Pled Viable Claims, each such Claim is Barred
                by the Applicable Statutes of Limitations...........................................21

V.      CONCLUSION ...........................................................................................23

i

CASE NO. CV11-10212 PSG (CWx)
DEFENDANT'S MEMO. OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT
SDODMS1/715110.1

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Ashcroft v. Iqbal*,
  _ U.S. _, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ...........................................4

*Bank of Am., N.A. v. Hensley Prop., L.P.*,
  No. 2:07cv-1584-GEB-EFB, 2007 U.S. Dist. LEXIS 95587 (E.D. Cal. Dec.
  28, 2007) ...........................................................................................................12

*Beckham Res., Inc. v. Mantle Res., L.L.C.*,
  No. 13-09-0083-CV, 2010 Tex. App. LEXIS 1323 (Tex. App.—Corpus
  Christi Feb. 25. 2010, pet. denied) ...................................................................12

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)............................................................................................4

*Brown v. Ogbulu*,
  331 S.W.3d 530 (Tex. App.—Dallas 2011, no pet.) ...........................................6

*Classical Vacations, Inc. v. Air France*,
  No. 01-01-01137-CV, 2003 Tex. App. LEXIS 3160 (Tex. App.—Houston
  [1st Dist.] Apr. 10, 2003, no pet.)......................................................................14

*Daniels-Hall v. Nat'l Educ. Ass'n*,
  629 F.3d 992 (9th Cir. 2010) ...............................................................................3

*Fortis Benefits v. Cantu*,
  234 S.W.3d 642 (Tex. 2007) ................................................................................6

*Hackberry Creek Country Club, Inc. v. Hackberry Creek Home Owners Ass'n*,
  205 S.W.3d 46 (Tex. App.—Dallas 2006, pet. denied) .......................................6

*Harrison v. Bass Enters. Prod. Co.*,
  888 S.W.2d 532 (Tex. App.—Corpus Christi 1994, no writ) ............................14

*Ileto v. Glock, Inc.*,
  349 F.3d 1191 (9th Cir. 2003) ..............................................................................4

*Janda v. T-Mobile USA, Inc.*,
  378 F. App'x 705 (9th Cir. 2010)........................................................................19

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) .................................................................. passim

*Khoury v. Maly's of Cal., Inc.*,
  14 Cal. App. 4th 612, 17 Cal. Rptr. 2d 708 (1993) ..................................... 15, 17

*Martinez v. Wells Fargo Home Mortg., Inc.*,
  598 F.3d 549 (9th Cir. 2010) ........................................................................ 15, 17

*Meyers-Armstrong v. Actavis Totowa, LLC*,
  382 F. App'x 545 (9th Cir. 2010) ................................................................. 16, 17

*Nat'l Plan Adm'rs, Inc. v. Nat'l Health Ins. Co.*,
  235 S.W.3d 695 (Tex. 2007) ........................................................................... 12

*Nichols v. YJ USA Corp.*,
  No. 3:06-CV-02366-L, 2009 U.S. Dist. LEXIS 22450 (N.D. Tex. March 18,
  2009) ................................................................................................................. 14

*Oki Semiconductor Co. v. Wells Fargo Bank, Nat'l Ass'n*,
  298 F.3d 768 (9th Cir. 2002) ........................................................................... 5

*Rosal v. First Fed. Bank of Cal.*,
  671 F. Supp. 2d 1111 (N.D. Cal. 2009) ........................................................... 15

*RPost Holdings, Inc. v. Trustifi Corp.*,
  No. CV 11-2118 PSG .................................................................................... 4, 5

*RSI Corp. v. Int'l Bus. Machs. Corp.*,
  No. 5:08-cv-3414 RMW (RS), 2009 U.S. Dist. LEXIS 18212 (N.D. Cal.
  Mar. 9, 2009) .................................................................................................... 13

*St. James v. Equilon Enter., LLC*,
  No. 980CV-00962 W (AJB), 2008 U.S. Dist. LEXIS 70271
  (S.D. Cal. Sept. 15, 2008) ........................................................................... 13, 14

*Stearns v. Select Comfort Retail Corp.*,
  No. 08-2746 JF, 2009 WL 1635931 (N.D. Cal. June 5, 2009) ......................... 15

*Stine v. Stewart*,
  80 S.W.3d 586 (Tex. 2002) .............................................................................. 21

*Taub v. Houston Pipeline Co.*,
  75 S.W.3d 606 (Tex. App.—Texarkana 2002, pet. denied) ............................... 21

iii

*Wood Motor Co. v. Nebel*,
  238 S.W.2d 181 (Tex. 1951) ....................................................................... 6

*Yumul v. Smart Balance, Inc.*,
  733 F. Supp. 2d 1134 (C.D. Cal. 2010) .................................... 19, 20, 22

*Zanze v. Snelling Servs, LLC*,
  412 F. App'x 994 (9th Cir. 2011) ......................................................... 15

### STATUTES

Cal. Bus. & Prof. Code § 17200 .......................................... 2, 14, 15, 16, 17

Cal. Bus. & Prof. Code § 17208 ..................................................... 21

Cal. Bus. & Prof. Code § 17500 .......................................... 2, 14, 18

Cal. Civ. Code § 338(a) ............................................................. 22

Tex. Civ. Prac. & Rem. Code § 16.004(a)(4) ...................................... 21

### OTHER AUTHORITIES

Fed. R. Civ. P. 9(b) ..................................................................... passim

Fed. R. Civ. P. 10(c) ......................................................................... 3

Fed. R. Civ. P. 12(b)(6) .................................................................. 4, 5

iv

Defendant Life Partners, Inc. ("LPI" or "Defendant") respectfully submits this memorandum of points and authorities in support of its motion to dismiss Plaintiff's Class Action Complaint ("Complaint" or "Compl.").

## I.   STATEMENT OF ISSUES TO BE DECIDED

All of Plaintiff's claims arise out of the agreements entered into by and between Plaintiff and Defendant and the relationship created thereunder.  The issues to be decided in this Motion are as follows: (1) whether Plaintiff has stated a claim upon which relief can be granted for breach of the operative agreements in light of the lack of any stated obligation by LPI to "optimize" premiums under the agreements; (2) whether Plaintiff has stated a claim upon which relief can be granted for breach of fiduciary duty where the agreements that form the basis of the parties' relationship expressly limit the duties of LPI to the Plaintiff, the claim for relief sounds solely in contract, and Texas law, which governs the agreements in question, precludes such a claim under the economic loss rule; (3) whether Plaintiff has stated a claim upon which relief can be granted for violations of California's "unfair competition" and "false advertising" laws when Plaintiff has not alleged any unlawful activity by LPI and has not pled fraud with requisite particularity under Rule 9(b); and (4) whether all of Plaintiff's claims are barred by the applicable statutes of limitations where each of the Plaintiff's transactions was completed more than four years before the filing of the instant suit, and any of the alleged breaches of contract and fiduciary duty and other alleged violations of California's unfair competition law would have occurred upon closing of such transactions.

## II.   STATEMENT OF FACTUAL ALLEGATIONS

Defendant LPI is engaged in the secondary market for the purchase and sale of life insurance policies, commonly known as "life settlements." Compl., ¶ 10.  A "life settlement" involves the purchase by a third party of a life insurance policy of a policy holder who is typically elderly or terminally ill.  *Id.* at ¶ 11.  Upon the sale of the policy, the policy holder receives "an immediate cash payment," and the purchaser

1    receives an ownership interest in the policy at a discount to the face value and

2    ultimately receives his or her proportionate share of the full amount of the death

3    benefit when the policy holder dies and the policy matures.  *See id.*; ¶ 13.  The

4    acquisition cost for a life settlement "includes all of Defendant's fees and costs

5    associated with the initial acquisition of the policy as well as amounts for the payment

6    of premiums to maintain the policy until it matures." *Id.* at ¶ 15.

7         Plaintiff alleges that, with respect to life settlements involving "universal life"

8    policies, such policies "offer 'flexible premiums'" and that, because "no reasonably

9    prudent purchaser of such a life settlement policy would pay more to the insurer than

10   the minimum (cost of insurance) required to maintain the policy," no reasonably

11   prudent agent "would pay, authorize or allow payment of additional amounts beyond

12   the minimum required to maintain the policy."  *Id.* at ¶ 18.  In sum, Plaintiff claims

13   that LPI determined the amount of funds to be placed into escrow by Plaintiff and the

14   putative class members to "maintain" the policy during the life expectancy of the

15   insured and that LPI "made, authorized and/or allowed excessive payments of the

16   Plaintiff's money to the various insurers over and above the amount required to

17   maintain the policies—i.e., Plaintiff and the class members were made to pay

18   premiums that were not 'optimized' to reflect the minimum amount of premiums to

19   keep policies in force."  *Id.* at ¶ 27.  Based on these and other allegations in the

20   Complaint, Plaintiff asserts claims of breach of fiduciary duty, breach of contract, and

21   violations of California's Unfair Competition Law pursuant to Business & Professions

22   Code § 17200 et seq., and California's False Advertising Law under Business &

23   Professions Code § 17500.

24        Each of Plaintiff's claims arise out of and are wholly contingent upon the

25   express terms of the agreements between Plaintiff and LPI, and accordingly, such

26   agreements may be considered by the Court in connection with this Motion to

27

28

Dismiss.[1]   Plaintiff and LPI entered into six discrete agreements:  (i) an Agency Agreement and Special Power of Attorney for Purchases Through an IRA ("Agency Agreement") dated June 21, 2006;[2] (ii) a Policy Funding Agreement for Purchases Through an IRA ("PFA") dated September 13, 2006 for the purchase of a 1.67% interest in a policy in the face amount of $2,000,000;[3] (iii) a Policy Funding Agreement for Purchases Through an IRA dated October 23, 2006 for the purchase of a 1.00% interest in a policy in the face amount of $4,000,000;[4] (iv) a Policy Funding Agreement for Purchases Through an IRA dated November 16, 2006 for the purchase of a .33% interest in a policy in the face amount of $10,000,000;[5] (v) a Policy Funding Agreement for Purchases Through an IRA dated November 20, 2006 for the purchase of a .67% interest in a policy in the face amount of $5,000,000;[6] and (vi) a Policy Funding Agreement for Purchases Through an IRA dated November 20, 2006 for the

---

[1] *See, e.g., Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (stating that "a court may consider evidence on which the complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion" and that "a court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)") (internal quotes and citations omitted); *see also* Fed. R. Civ. P. 10(c).  True and correct copies of the agreements between Plaintiff and LPI, along with the documents that accompanied such agreements, and a document entitled "Disclosures – Read Before You Invest," all of which are referenced in the Complaint and which form the bases of Plaintiff's claims, are attached and incorporated by reference to the Declaration of R. Scott Peden, filed simultaneously herewith and incorporated by reference herein.  *See* Declaration of R. Scott Peden In Support Of Motion To Dismiss ("Peden Decl."), **Exhibits ("Exh") A – G.**  Where applicable, these documents have been redacted to remove identifying information to protect the privacy of the underlying insureds on the policies made the subject of each transaction.

[2] Peden Decl., **Exh A.**

[3] Peden Decl., **Exh B** (consisting of the PFA and accompanying Promissory Note, Confidential Case History, Policy Illustration, and Policy Information Statement).

[4] Peden Decl., **Exh C.**  Note, however, because this life settlement pertains to a "whole life policy," versus a universal life policy, this transaction cannot form the basis of any claim by Plaintiff as alleged in the Complaint.  *See* Compl., ¶ 17 (discussing "universal life insurance" policies and the fact that "these policies offer 'flexible premiums,'" and allow an insured to pay "only the minimum to maintain the policy").

[5] Peden Decl., **Exh D** (consisting of the PFA and accompanying Promissory Note, Confidential Case History, Policy Illustration, and Policy Information Statement).

[6] Peden Decl., **Exh E** (consisting of the PFA and accompanying Promissory Note, Confidential Case History, Policy Illustration, and Policy Information Statement).

3

purchase of a .86% interest in a policy in the face amount of $4,000,000.[7]  Plaintiff also alleges a claim arising out of a document that was provided to Plaintiff along with the Agency Agreement, entitled "Disclosures – Read Before You Invest" and dated May 17, 2006.[8]

## III.   LEGAL STANDARDS FOR DISMISSAL

Defendant moves to dismiss Plaintiff's claims under Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure.  A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint.  *See Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003).  Accordingly, a motion to dismiss under Rule 12(b)(6) should be granted where a plaintiff is unable to delineate "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, _ U.S. _, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868, 884 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This Court has recently described the legal standard for a Motion to Dismiss under Rule 12(b)(6) as follows:

> [A] complaint **must** be dismissed when a plaintiff's allegations fail to state a claim upon which relief can be granted. Dismissal for failure to state a claim does not require the appearance, beyond a doubt, that the plaintiff can prove 'no set of facts' in support of its claim that would entitle it to relief. [*Twombly*, 550 U.S. at 546] (abrogating *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). In order for a complaint to survive a 12(b)(6) motion, it must state a claim for relief that is plausible on its face. [*Iqbal*, 129 S. Ct. at 1950.] A claim for relief is facially plausible when the plaintiff pleads enough facts, taken as true, to allow a court to draw a reasonable inference that the defendant is liable for the alleged conduct. *Id.* at 1949. If the facts only allow a court to draw a reasonable inference that the defendant is possibly liable, then the complaint must be dismissed. *Id.* Mere legal conclusions are not to be accepted as true and do not establish a plausible claim for relief. *Id.* at 1950. Determining whether a complaint states a plausible claim for relief is a context-specific task requiring the Court to draw on its judicial experience and common sense. *Id.*

*RPost Holdings, Inc. v. Trustifi Corp.*, No. CV 11-2118 PSG (SHx), 2011 U.S. Dist.

---

[7]  Peden Decl., **Exh F** (consisting of the PFA and accompanying Promissory Note, Confidential Case History, Policy Illustration, and Policy Information Statement).
[8]  Peden Decl., **Exh G.**

1    LEXIS 117260, at *4-5 (C.D. Cal. Oct. 11, 2011) (emphasis added).

2         In short, a district court "'retain[s] the power to insist upon some specificity in

3    pleading before allowing a potentially massive factual controversy to proceed.'"

4    *Twombly*, 550 U.S. at 558.  Where it appears, as here, that Plaintiff cannot recover

5    under any viable theory, then dismissal of the claims with prejudice is proper, as any

6    amendment would be futile.  *See Oki Semiconductor Co. v. Wells Fargo Bank, Nat'l*

7    *Ass'n,* 298 F.3d 768, 772, 777-78 (9th Cir. 2002) (affirming denial of motion to

8    amend after Rule 12(b) dismissal of complaint).

9         Additionally, with respect to Plaintiff's "unfair competition" and false

10   advertising claims, because such claims sound in fraud, they are governed by the

11   pleading standard set forth in Rule 9(b).  *See Kearns v. Ford Motor Co.*, 567 F.3d

12   1120, 1125 (9th Cir. 2009) (holding that Rule 9(b)'s particularity requirements apply

13   to claims asserted under California's unfair competition law); *RPost Holdings*, 2011

14   U.S. Dist. LEXIS 117260, at *12-13 (applying Rule 9(b) to Plaintiff's state law false

15   advertising claim).  To satisfy that standard, Plaintiff must allege the "who, what,

16   where, and how of the misconduct alleged" such that Defendant has an opportunity to

17   respond to the alleged misconduct.  *Kearns*, 567 F.3d at 1126 (affirming the district

18   court's dismissal of the complaint for failure to satisfy the particularity requirements

19   of Rule 9(b)).  Plaintiff's failure to do so necessitates dismissal of her "unfair

20   competition" and false advertising claims.

21   **IV.    LEGAL AUTHORITIES IN SUPPORT OF DISMISSAL OF CLAIMS**

22        **A.    Plaintiff Fails to Allege an Actionable Breach of Contract by LPI.**

23        Plaintiff purports to assert a claim for breach of contract by LPI for failing to

24   perform duties that were simply not required under any agreement between the

25   parties.  Tellingly, Plaintiff fails to specify any provision of any contract that was

26   breached, and instead makes the conclusory allegation that LPI failed to "optimize"

27   premiums to "maintain" the policies in question, and that such conduct by LPI

28   constituted a breach of contract.  Because no provision of any agreement or contract

1    between LPI and Plaintiff (or any member of the putative class) obligated LPI to

2    optimize premiums, Plaintiff's breach of contract claim fails as a matter of law.

3         Plaintiff asserts, and the agreements confirm, that Texas law governs any

4    dispute arising out of the performance of the parties under the agreements.  *See*

5    Compl., ¶ 65 (stating that the parties agreed that "the contracts in question would be

6    governed by Texas law"); Exh B, ¶ 5.01.a.  Under Texas law, the elements of a breach

7    of contract claim are as follows: (1) the existence of an enforceable contract;

8    (2) performance or tendered performance by the plaintiff; (3) breach of the contract by

9    the defendant; and (4) damages incurred by the plaintiff as a result of the breach.  *See*

10   *Hackberry Creek Country Club, Inc. v. Hackberry Creek Home Owners Ass'n*, 205

11   S.W.3d 46, 55 (Tex. App.—Dallas 2006, pet. denied); *see also Brown v. Ogbulu*, 331

12   S.W.3d 530, 535 (Tex. App.—Dallas 2011, no pet.).

13        Texas courts have long held that "contracts when entered into freely and

14   voluntarily shall be held sacred and shall be enforced by Courts of justice" and that,

15   where the language of a contract is unambiguous, "resort to the rules of construction is

16   not permissible."  *Wood Motor Co. v. Nebel*, 238 S.W.2d 181, 185 (Tex. 1951)

17   (citations omitted); *see also Fortis Benefits v. Cantu*, 234 S.W.3d 642, 649 (Tex.

18   2007) ("This Court has long recognized a strong public policy in favor of preserving

19   the freedom of contract.") (quotations and citations omitted).  Accordingly, where a

20   contract, by its express terms, does *not* impose an obligation on a contracting party, a

21   court may not engraft such an obligation into the contract, including under the

22   auspices of equity.  *Fortis Benefits*, 234 S.W.3d at 649 n.41 ("As a rule, a court should

23   not by judicial fiat insert non-existent language into … parties' agreed-to contracts, or

24   delete existent language from them either. Our confined duty is to construe the

25   contract as is, and holding that equitable considerations trump contrary contract terms

26   would render contractual [provisions] a nullity.").

27        In this case, Plaintiff attempts to do what she is prohibited from doing under

28   fundamental, well-settled Texas law—impose terms or obligations on LPI under the

6

agreements that are not expressed therein and/or ask the Court to re-write the Parties' agreements to include provisions that the Parties neither contemplated nor negotiated. With respect to Plaintiff's breach of contract claim, Plaintiff alleges as follows: (i) that LPI authorized or allowed the escrowed funds of Plaintiff to be used to make payments of premiums that were not necessary for policy maintenance, *i.e.*, LPI did not perform or require "premium optimization" (Compl., ¶ 27); (ii) that LPI "failed to take steps needed to make sure the Plaintiff was being charged and paying only the cost to maintain the policies" (*Id.* at ¶ 29); and (iii) that LPI made, authorized, and/or allowed "Plaintiff's money to be used to make improper, irrational, unjustifiable and unnecessary payments to the insurer over and above the amount required to maintain the insurance policies in question" (*Id.*; *see also id.* at ¶ 61).  Plaintiff further asserts (erroneously), several times, that "the agreement between each class member and Defendant **expressly provided** (as did Plaintiff's agreement) that Defendant would not have any discretion to invest or use the class member's money other than as directed by the parties' agreement." *Id.* at ¶¶ 27, 32, 59 (emphasis added).

As support for her claim, Plaintiff cites a January 27, 2011 article from *The Life Settlement Report*, which stated, in part, that "[Defendant] has been requiring investors to pay level or flat premiums unlike the rest of the market, which optimizes or pays the minimum amount of premiums to keep policies in force." *Id.* at ¶ 27. Plaintiff further claims that, prior to the publication of the *Life Settlement Report* article, "Plaintiff had no idea—and no reasonable way of knowing—that she was being made to pay amounts beyond the cost to maintain the policies." *Id.* at ¶ 28. Although Plaintiff attempts to portray this article as "reveal[ing]" purportedly improper and theretofore undisclosed conduct, Plaintiff does not allege that the use of level premiums was expressly precluded by the Parties' agreements or that such practice is otherwise illegal or prohibited under the law, nor does Plaintiff disclose the fact that the use of level premiums was in fact expressly contemplated by the Parties and was made part of the agreements at the outset of each and every transaction as set

7

forth in the Policy Illustration provided for each life settlement purchase.[9]  Thus, none of the foregoing allegations assert an actionable breach of any agreement between Plaintiff and LPI, because none of the agreements between Plaintiff and LPI require LPI to perform any of the referenced actions.

More specifically, the agreements between LPI and Plaintiff provide the following with respect to LPI's duties and obligations to Plaintiff:

### The Agency Agreement

• LPI "shall identify and assist in the purchase of such life insurance policies and/or related death benefits specified by purchaser" which comply with specified criteria (not at issue in this action).[10]

• LPI, as Plaintiff's agent in connection with the specified life settlement transactions, "will cause the **Escrow Agent**, on behalf of PURCHASER herein, to distribute the funds for the purchase of the policy, hold the policy in safekeeping until the death of the insured, thereafter apply for payment of the death benefit from the insurance carrier and upon receipt, distribute all proceeds as directed by PURCHASER in accordance with the Funds Transfer Instructions and agreement executed by Agent on behalf of PURCHASER."[11]

### *Special Power of Attorney*[12]

Plaintiff appoints LPI as its agent and attorney in fact for the following express and limited purposes (*in toto*):

a.    "File, complete, execute and record any document reflecting the transfer of ownership and/or irrevocable assignment of benefits with the insurance carrier of the purchased policy and/or any governmental agency requiring notification of said transfer."

---

[9] *See* **Exh B**, at p. 11; **Exh C**, at p. 17; **Exh D**, at p. 23; **Exh E**, at p. 29; **Exh F**, at p. 35.
[10] *See* **Exh A**, at ¶ 1.
[11] *Id.* at ¶ 2 (bold emphasis added).
[12] *See id.*  The Special Power of Attorney is included within the Agency Agreement.

8

b. "Do any and all other actions which may be necessary to complete the loan transaction documents from the viatical grantor trust secured by the proceeds of any such policy."

c. "Issue instructions to the Escrow Agent as necessary to insure that the note payable to PURCHASER is paid from the proceeds of the purchased policy received by the Escrow Agent."

d. "Advance, at the discretion of AGENT, any funds which may be necessary to replenish the escrow account from which premium payments are made. Nothing herein shall obligate AGENT to make any such advance. However, if such advances are made, PURCHASER specifically authorizes ESCROW AGENT to reimburse AGENT for any such advances actually made from any amounts payable from ESCROW AGENT to PURCHASER from the proceeds of any policy purchased pursuant to this agreement; however nothing herein shall limit AGENT from recovering any such amount advanced in any other manner permitted under law."[13]

• The Special Power of Attorney further states that it "shall convey NO OTHER AUTHORITY other than as stated in paragraphs 8(a)(b)(c)(d) above upon AGENT."[14]

**The Policy Funding Agreement for Purchases Through an IRA**[15]

• "LPI … shall execute and forward a copy of this agreement along with all other necessary documents to the above named Escrow Agent who shall place the above-referenced loan proceeds into an Escrow Account and disburse such funds according to said documents."[16]

• "LPI shall perform the following duties:

---

[13] *Id.* at ¶ 8.
[14] *Id.* at ¶ 9.
[15] *See* **Exhs B – F.** The form of each PFA (**Exhs B-F**) is identical, so all quotes to **Exh B** are intended to encompass all of the PFAs between Plaintiff and LPI.
[16] **Exh B,** at ¶ 1.02.

9

a.      "review applicants for viatical or life settlements,"

b.      "qualify applicants for viatical or life settlements based upon underwriting criteria and other relevant guidelines pursuant to the above referenced Agency Agreement, and provide such information to PURCHASER,"

c.      "forward the note evidencing the loan and all other documents necessary to open an escrow account to the Escrow Agent in accordance with Section 1.02 of this agreement,"

d.      "prepare and retain a confidential PURCHASER'S file containing all data and documents pertaining to the acquisition of said policy and PURCHASER'S loan relating thereto."[17]

- The PFA further states: "LPI makes no representations as to what specific net amount will be accepted by the applicant for the sale of the policy, nor the specific fees assessed by LPI or by any specific supporting entity including reviewing physicians, laboratories, attorneys, licensees and consultants as well as legal and escrow costs. **After purchase, LPI shall have no further specific duties to PURCHASER, but shall use its best efforts to assist PURCHASER, if requested, in any way possible."**[18]

The above quoted excerpts set forth the entirety of the obligations of LPI under the agreements between LPI and Plaintiff.[19]  These obligations do NOT include: (i) a requirement that LPI optimize premiums; (ii) a requirement that LPI direct the Escrow Agent to optimize premiums; or (iii) any other action by LPI to ensure premium payments were made at the minimum cost of insurance to maintain the policies—no such language is found anywhere in any of the agreements.  In fact, as of the close of each transaction, the agreements make clear that LPI is under no further obligation to

---

[17] *Id.* at ¶ 2.01.
[18] *Id.* at ¶ 3.01 (emphasis in original).
[19] *See* **Exhs A - F**.

10

1   Plaintiff other than to assist the Purchaser, *if requested*.[20]  There is no allegation in the

2   Complaint that Plaintiff requested the assistance of LPI with respect to any aspect of

3   the transactions, or that LPI refused or failed to offer its best efforts to so assist

4   Plaintiff.  *See generally* Compl.

5         Moreover, Plaintiff admits that "the purchaser provides funds to be escrowed in

6   the amount that would be required for premiums assuming the policy must be

7   maintained for the full estimated maximum life expectancy."  Compl., ¶ 20.  By

8   expressly agreeing to escrow funds based upon the Policy Illustration provided to

9   Plaintiff for each transaction (which sets out the annual premiums for the duration of

10  the life expectancy of the insured), Plaintiff acknowledged and agreed to the use of

11  level premiums in accordance with the Policy Illustration.[21]  Therefore, because LPI

12  made clear, and Plaintiff agreed to, the schedule of premiums to be paid on each

13  policy for the length of the illustration, and because it is not alleged that the premiums

14  were paid other than in accordance with the Policy Illustrations, it is readily apparent

15  from the allegations in the Complaint and the agreements incorporated by reference

16  thereto, that LPI did not breach such agreements.  Thus, Plaintiff has failed to state a

17  claim upon which relief can be granted for breach of contract, and this claim must be

18  dismissed.  Moreover, because Plaintiff's claim requires the Court to read language

19  and obligations in the agreements which do not exist, Plaintiff cannot amend the

20  Complaint to remedy the fatal error in her claim, and accordingly, the claim should be

21  dismissed with prejudice.

22      **B.    Plaintiff Fails to State a Claim for Breach of Fiduciary Duty.**

23      Plaintiff's breach of fiduciary duty claim arises out of two types of agreements

24  ────────────────
    [20] *See* **Exh B**, at ¶ 3.01.
25  [21] *See, e.g.,* **Exh B**, at p. 7 ("WHEREAS PURCHASER has reviewed and approves
    and adopts the criteria utilized by LPI to purchase said policies as agent"); **Exh A**, ¶ 6
26  ("PURCHASER acknowledges that Agent has made available to him or his personal
    representative or advisor the opportunity to obtain additional information to verify the
27  accuracy of the information contained in the documents delivered to him and to
    evaluate the merits and risks of transactions conducted under this agreement."); *See*
28  *also* **Exh B**, at p. 11; **Exh C**, at p. 17; **Exh D**, at p. 23; **Exh E**, at p. 29; **Exh F**, at p. 35
    (Policy Illustrations for each purchase reflecting the use of level premiums).

1    entered into between Plaintiff and LPI:  (i) the "Agency Agreement and Special Power
2    of Attorney for Purchases Through an IRA,"[22] and (ii) the "Policy Funding Agreement
3    for Purchases Through an IRA."[23]   As noted above, Plaintiff concedes that because
4    Plaintiff and LPI "expressly agreed … that the contracts in question would be
5    governed by Texas law …," her breach of contract claim is governed by Texas law.
6    See Compl., ¶ 65.  "[W]here tort claims arise from a contract containing a choice-of-
7    law clause, the choice-of-law clause governs the tort claims as well as any contract
8    claims."  *Bank of Am., N.A. v. Hensley Prop., L.P.*, No. 2:07cv-1584-GEB-EFB, 2007
9    U.S. Dist. LEXIS 95587, at *7-8 (E.D. Cal. Dec. 28, 2007).  Accordingly, Plaintiff's
10   breach of fiduciary duty claim should be analyzed under Texas law.  Applying Texas
11   law, this claim fails as a matter of law on at least two grounds.

12                 **1.       LPI did not Owe a Fiduciary Duty to Optimize Premiums.**

13           Under Texas law, the existence and extent of the duties an agent owes to a
14   principal are determined by the terms of the agreement between the parties.  *Nat'l*
15   *Plan Adm'rs, Inc. v. Nat'l Health Ins. Co.*, 235 S.W.3d 695, 702 (Tex. 2007) (citing
16   Restatement (Second) and (Third) of Agency).  Thus, it is well-settled that "the duties
17   owed by the agent to the principal may be altered by agreement."  *Beckham Res., Inc.*
18   *v. Mantle Res., L.L.C.*, No. 13-09-0083-CV, 2010 Tex. App. LEXIS 1323, at *33
19   (Tex. App.—Corpus Christi Feb. 25. 2010, pet. denied) (citing *Crown Life Ins. Co. v.*
20   *Casteel*, 22 S.W.3d 378, 385 (Tex. 2000)).  One need only look to the agreements at
21   issue in this case to determine that Plaintiff has failed to state a claim for breach of
22   fiduciary duty.

23           Fundamental to Plaintiff's breach of fiduciary duty claim is the allegation that
24   "Plaintiff and the class members were made to pay premiums that were not
25   'optimized' to reflect the minimum amount of premiums to keep policies in force."

---

26   [22] *See* Compl., ¶ 19 (referencing standard form contract appointing LPI as "agent" and
27   "attorney in fact"), ¶ 48 (referencing "express agreement" between the parties for LPI
     to serve as "agent" and "attorney in fact"); *see also* **Exh A**.
28   [23] *See* Compl., ¶ 19 (referencing form "policy funding agreement" as authorizing LPI
     to act as "agent" and "attorney in fact"); *see also* **Exhs B – F.**

Compl., ¶ 27.   Thus, absent a contractually-based duty to "optimize premiums," Plaintiff's claim for breach of fiduciary duty on this ground must fail.  As discussed in Section A above, LPI had no contractual obligation to optimize premiums and, in fact, had disclosed to Plaintiff at the outset of each transaction that premium payments were estimated to be identical from year-to-year.  Accordingly, because no duty— whether contractual or fiduciary—existed, as alleged by Plaintiff, no breach thereof could have occurred, and Plaintiff's breach of fiduciary duty claim must be dismissed with prejudice.

### 2.   The Economic Loss Rule Precludes Plaintiff's Breach of Fiduciary Duty Claim.

Because Texas law governs the breach of contract claim, Texas law also applies to determine whether or not the economic loss rules precludes claims that sound in contract.  *See St. James v. Equilon Enter., LLC*, No. 980CV-00962 W (AJB), 2008 U.S. Dist. LEXIS 70271, at *6-9, 15-16 (S.D. Cal. Sept. 15, 2008) (applying Texas law to determine whether the economic loss rule precluded non-contractual claims that sounded in contract once the court determined that Texas law governed the breach of contract claim); *see also RSI Corp. v. Int'l Bus. Machs. Corp.*, No. 5:08-cv-3414 RMW (RS), 2009 U.S. Dist. LEXIS 18212, at *4-12 (N.D. Cal. Mar. 9, 2009) (applying New York choice of law clause to breach of contract claims and applying New York economic loss rule to related tort claims).  As recognized by the *St. James* Court, under Texas law, "if the defendant's conduct gives rise to liability only because it breaches the parties' agreement, the plaintiff's claim ordinarily sounds only in contract."  *St. James*, 2008 U.S. Dist. LEXIS 70271, at *16 (citing *Sw. Bell Tel. Co. v. Delanney*, 809 S.W.2d 493, 494 (Tex. 1991)).  Further, "[w]hen the injury is only economic loss to the subject of a contract itself, the action sounds in contract alone."  *Id.* (citing *Delanney*, 809 S.W.2d at 494).

Such is the case here.  As discussed above, Plaintiff relies solely on the Parties' contracts to support her claim for breach of fiduciary duty.  In addition, Plaintiff seeks

13

1   purely economic loss that is the subject of the contract, i.e., premium payments made

2   pursuant to said contracts.  Indeed, Plaintiff seeks identical damages under both her

3   breach of fiduciary duty and breach of contract claims:

> Defendant . . . causes damages to Plaintiff and the class members each
> time that Defendant makes, authorizes or allows Plaintiff's and/or a class
> member's money to be used to make improper, irrational, unjustifiable
> and unnecessary payments to the insurer over and above the amount
> required to maintain the insurance policies in question.[24]

7   Accordingly, it is indisputable that Plaintiff's purported tort claim sounds wholly in

8   contract.

9       As such, the economic loss rule requires dismissal of the breach of fiduciary

10  duty claim.  *See id*; *see also Nichols v. YJ USA Corp.*, No. 3:06-CV-02366-L, 2009

11  U.S. Dist. LEXIS 22450, at *61-63 (N.D. Tex. March 18, 2009) (holding that the

12  economic loss rule barred plaintiff's breach of fiduciary duty claim because plaintiff's

13  damages were only for economic loss to the subject of the contract); *Classical*

14  *Vacations, Inc. v. Air France,* No. 01-01-01137-CV, 2003 Tex. App. LEXIS 3160, at

15  *4-7 (Tex. App.—Houston [1st Dist.] Apr. 10, 2003, no pet.) (setting aside judgment

16  for breach of fiduciary duty because plaintiff's claim sounded only in contract where

17  the only damages claimed were for economic loss under the parties' contract); *Harrison v. Bass Enters. Prod. Co.*, 888 S.W.2d 532, 536 (Tex. App.—Corpus Christi

18  *Harrison v. Bass Enters. Prod. Co.*, 888 S.W.2d 532, 536 (Tex. App.—Corpus Christi

19  1994, no writ) (affirming summary judgment on breach of fiduciary duty claims

20  where only contract damages were sought).  Thus, for this additional reason,

21  Plaintiff's breach of fiduciary duty claim must be dismissed with prejudice.

22      **C.    Plaintiff Fails to State a Claim Under Cal. Bus. & Prof. Code § 17200
            or § 17500.**

23

24      California's Unfair Competition Law "prohibits 'unlawful, unfair or fraudulent

25  business act[s] or practice[s]' and 'unfair, deceptive, untrue or misleading

26  advertising.'"  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009)

27  (quoting Cal. Bus. & Prof. Code § 17200); *see also* Cal. Bus. & Prof. Code § 17500.

---

28  [24]  *Compare* Compl., ¶ 54 (breach of fiduciary duty damages) *with* ¶ 63 (breach of contract damages).

The Ninth Circuit has expressly stated that "Rule 9(b)'s particularity requirement applies to these state law causes of action." *Kearns*, 567 F.3d at 1125 (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1102 (9th Cir. 2003)). "Each prong of the UCL is a separate and distinct theory of liability." *Id.* at 1127.

First, with respect to the "unlawful" prong of the statute, "[c]onduct that is deemed lawful cannot be the basis of a UCL claim, even if that conduct might otherwise be considered unfair." *Zanze v. Snelling Servs, LLC*, 412 F. App'x 994, 996 (9th Cir. 2011) (citing *Byars v. SCME Mortgage Bankers, Inc.*, 109 Cal. App. 4th 1134, 135 Cal. Rptr. 2d 796, 805 (Cal. Ct. App. 2003)). Stated another way, the "UCL's 'unlawful' prong is essentially an incorporate-by-reference provision." *Martinez v. Wells Fargo Home Mortg., Inc.*, 598 F.3d 549, 557 (9th Cir. 2010) (citing *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 83 Cal. Rptr. 2d 548, 973 P.2d 527, 539-40 (Cal. 1999) ("By proscribing 'any unlawful' business practice, section 17200 borrows violations of other laws and treats them as unlawful practices that the [UCL] makes independently actionable.")). Thus, to adequately allege a claim under this prong of the UCL, one must expressly allege that the conduct violates another statute, rule, regulation, or law. *See id.*

Next, where a plaintiff seeks to recover under the "unfair" business practices prong of § 17200, numerous courts have held that the Complaint must meet the heightened-pleading requirement of Rule 9(b) *and* allege that the defendant's conduct was either (1) "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim," or (2) in violation of public policy "tethered to specific constitutional, statutory or regulatory provisions." *See Khoury v. Maly's of Cal., Inc.*, 14 Cal. App. 4th 612, 619, 17 Cal. Rptr. 2d 708, 712 (1993) (stating that a plaintiff must allege facts supporting a § 17200 claim with reasonable particularity as to each of the statutory elements); *see also Rosal v. First Fed. Bank of Cal.*, 671 F. Supp. 2d 1111, 1127-28 (N.D. Cal. 2009) (dismissing

15

§ 17200 claim where plaintiffs' failure to distinguish alleged conduct of each defendant fell short of heightened-pleading standard); *Stearns v. Select Comfort Retail Corp.*, No. 08-2746 JF, 2009 WL 1635931, at *17 (N.D. Cal. June 5, 2009) (finding that generalized statements are not actionable under § 17200); *Meyers-Armstrong v. Actavis Totowa, LLC*, 382 F. App'x 545, 547, n.1 (9th Cir. 2010) (applying Rule 8(a) but nonetheless finding that the plaintiff failed to "give notice of the allged illegal act" or to plead that "the injury to consumers outweigh[ed] the benefits of the business practice" and "that Defendants violated public policy or that [plaintiff's] injury was substantial," and further noting that the "claim would still be insufficient for failure to plead the fraudulent conduct with particularity as required by Federal Rule of Civil Procedure 9(b)") (citing *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 49 Cal. Rptr. 3d 227, 240 (Cal. Ct. App. 2006)).

As to the third prong, where a plaintiff alleges "a unified course of fraudulent conduct and rel[ies] on that course of conduct as the basis of that claim, … the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading … as a whole must satisfy the particularity requirement of Rule 9(b)." *Kearns*, 567 F.3d at 1125. In *Kearns*, the Ninth Circuit applied Rule 9(b) to the plaintiff's California unfair competition and false advertising claims and found that the plaintiff "failed to articulate the who, what, when, where, and how of the misconduct alleged" and affirmed the district court's dismissal of the complaint for failure to plead the claims with requisite particularity. *Id.* at 1126. The court further stated:

> To determine if the elements of fraud have been pleaded to state a cause of action we look to state law. The elements of a cause of action for fraud in California are: (a) misrepresentation (false representation, concealment, or *nondisclosure*); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.

*Id.* (internal citation omitted) (italics in original) (quoting *Engalla v. Permanente Med. Group, Inc.*, 15 Cal. 4th 951, 974, 64 Cal. Rptr. 2d 843, 938 P.2d 903 (Cal. 1997)). Applying these elements and Rule 9(b)'s pleading standard to plaintiff's claims, the

16

1    court found the plaintiff's nondisclosure assertions equated to causes of action

2    sounding in fraud and that such claims were properly dismissed due to the failure to

3    plead them with requisite particularity.  *Id.* at 1126-27.

4         Applying the above standards and precedents to Plaintiff's "unfair competition"

5    and false advertising claims asserted in the Complaint in the instant case, it is apparent

6    that Plaintiff fails to satisfy both the basic pleading requirements of Rule 8(a), as well

7    as the heightened-pleading standards set forth in Rule 9(b), by failing to allege the

8    requisite facts under any of the three prongs of the statute.  First, the underlying

9    conduct of which Plaintiff complains—i.e., the use of level premiums versus premium

10   optimization—is not unlawful under any federal or state statute, rule, or regulation,

11   nor has Plaintiff alleged that it is.  *See, e.g., Martinez*, 598 F.3d at 557-58 (finding that

12   the plaintiff failed to allege a predicate act that violated another law and, therefore,

13   failed to state a claim for an "unlawful" act under the UCL); *Myers-Armstrong*, 382 F.

14   App'x at 547 (finding that the complaint gave no notice of an alleged "illegal act" and

15   therefore, failed to state a claim for relief under the unlawful prong of the UCL).

16   Consequently, Plaintiff has failed to state a claim for a violation of § 17200 for an

17   "unlawful" act or practice by LPI.

18        Second, with respect to the "unfair" prong, Plaintiff has failed to assert that LPI

19   engaged in any "immoral, unethical, oppressive, unscrupulous or substantially

20   injurious" actions or that the utility of the use of level premiums, versus use of

21   premium optimization, is outweighed by the gravity of the alleged harm to Plaintiff,

22   particularly in light of the fact that the Parties agreed from the outset that level

23   premiums would be utilized.  Nor has Plaintiff alleged any violation of public policy

24   by LPI that is "tethered to specific constitutional, statutory or regulatory provisions."

25   *See Khoury*, 17 Cal. Rptr. 2d at 712.  Instead, Plaintiff merely reiterates, in conclusory

26   fashion, that LPI "made, authorized and/or allowed excess payments (using money

27   belonging to Plaintiff and the class members) to insures [sic] over and above the

28

                                              17

amount necessary to keep the policies in force…."  Compl., ¶ 69.  In other words, Plaintiff relies on the same conduct that she claims constituted breaches of contract and fiduciary duty by LPI, which, for the reasons stated in Sections A and B, *supra*, fail to state a claim for breaches of contract or fiduciary duty.  However, even if true, such conduct cannot be shown to be unfair (under any of the applicable standards), because this was precisely what the Parties contemplated and agreed upon with respect to each transaction.[25]

Third, with respect to a claim under the "fraudulent" acts or practices prong of the statute, the Complaint is devoid of allegations that meet the heightened-pleading burden demanded by Rule 9(b) and under California law for a cause of action sounding in fraud.  *See Kearns*, 567 F.3d at 1126 (citing *Engalla*, 938 P.2d 903).  Plaintiff fails to sufficiently allege the requisite details of a misrepresentation (or alleged nondisclosure) by LPI, knowledge of falsity of such misrepresentation by LPI, intent to defraud by LPI (indeed, nowhere does Plaintiff assert that LPI benefited in any way by utilizing level premiums), *justifiable reliance* by Plaintiff, and damages resulting from same.  Nor can Plaintiff allege such facts, because the gravamen of the Complaint asserts conduct by LPI that was expressly agreed to by the Parties and was fully disclosed to Plaintiff (hence her inability to plead or prove justifiable reliance on a purported omission of such information), negating any cognizable claim of fraud sounding in such conduct.[26]

Finally, to the extent Plaintiff purports to assert a claim for "false advertising" under § 17500 of the Business & Professions Code, such claim also fails as a matter of law for several reasons.  For the same reasons stated above with respect to a fraud claim under the unfair competition law, Plaintiff has also failed to plead with requisite particularity the elements of a fraud claim under California's false advertising law.  In support of her assertions under § 17500, Plaintiff alleges that "Defendant …

---

[25] *See* **Exhs B – F.**
[26] *See* **Exhs B – F.**

18

advertised—for example, in number 3 on Defendant's standard form 'Disclosures – Read Before You Invest'—that a purchasers [sic] of life settlements would be required to place funds in [sic] for the purpose of paying premiums to 'keep the policy in force' and, similarly, if such funds were depleted, would be required to place additional funds in escrow for the purpose of paying premiums to 'keep the policy in force.'" Compl., ¶ 69.  However, nowhere does Plaintiff allege that the funds that were placed in escrow for her life settlement transactions were *not* used "to keep the policies in force," that the policies lapsed, or were otherwise "not maintained" through the payment of premiums to the insurance companies.  Nor does Plaintiff allege any facts explaining in what way the risk disclosure document purportedly constitutes an "advertisement" (i.e., how and in what manner it was disseminated to the public, where or when it was received or reviewed by Plaintiff, via what "media" or method it was received, and how it constitutes something other than what it plainly states that it is—a list of risks related to a specific agreement to appoint LPI as the purchaser's agent for the purchase a life settlement).[27]

Plaintiff also fails to allege how the use of level premiums was inconsistent with, or contrary to, anything asserted in the risk disclosure document or in any other "advertisement" purportedly utilized by LPI.[28]  A simple review of the risk disclosure document reveals nothing misleading or inconsistent with the terms agreed upon by the Parties in connection with the payment of premiums.[29]  Thus, Plaintiff has not pled the necessary facts to state a claim for relief under California's false advertising law. *See, e.g., Janda v. T-Mobile USA, Inc.*, 378 F. App'x 705, 707 (9th Cir. 2010) (finding that plaintiffs failed to demonstrate above a speculative level that any of the defendant's advertising was likely to deceive members of the public, and therefore, that plaintiffs failed to state a claim under either the UCL or FAL).

Finally, with respect to allegations in a Complaint that are wholly inconsistent

---

[27] *See* **Exh G.**
[28] *See id.*
[29] *See id.*; **Exhs A – F.**

19

with or outright contradicted by the operative documents upon which a plaintiff's claims are based, this Court has previously held that such unfounded allegations need not be given credence or otherwise accept as true, including at the Motion to Dismiss stage. *See, e.g., Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1134, 1138 (C.D. Cal. 2010) ("[A] court need not accept as true allegations contradicting documents that are referenced in the complaint.") (internal quotes and citations omitted).  In the instant Complaint, Plaintiff makes numerous conclusory, unfounded assertions in connection with her false advertising claim, including that "Defendant represented to purchasers of life settlements that the amounts purchasers were required to place into escrow was an amount necessary to ***maintain*** the policies and would be used to ***maintain*** the policies, even though such representation was untrue or misleading, and was known, or which by the exercise of reasonable care should have been known, by Defendant to be untrue or misleading"; (Compl., ¶ 70, p.23) (emphasis in original) and that a "reasonable man would have considered 'material' and would have relied upon Defendant's misrepresentation that the amounts purchasers were required to place into escrow was an amount to ***maintain*** the policies and would be used to ***maintain*** the policies." *Id.* at ¶ 71.

Despite Plaintiff's repeated use of the word "maintain," such word never appears in any of the agreements at issue, nor in the risk disclosure document relied upon by Plaintiff.[30]  Accordingly, no inferences, "rebuttable presumptions," or other benefit should be conferred upon Plaintiff in connection with such allegations. *See, e.g., Yumul*, 733 F. Supp. 2d at 1137 (stating that a court need not "accept as true unreasonable inferences or legal conclusions cast in the form of factual allegations") (citing *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) ("Such

---

[30] *See* **Exhs A – G**.  Notably, even if LPI had utilized the word "maintain" to refer to the payment of premiums to keep the policies in force, common sense and the plain meaning of the word lead to the inescapable conclusion that such term is in no way contrary to the practice of making level premium payments to the insurers in order to keep the policies in force.  Plaintiff's use of the word in such a way is nothing more than a red herring, particularly in light of the fact that the word does not even appear in the operative documents.

20

allegations are not to be discounted because they are 'unrealistic or nonsensical,' but rather because they do nothing more than state a legal conclusion – even if that conclusion is cast in the form of a factual allegation.")).  Thus, Plaintiff has failed to state a claim upon which relief can be granted for violations of California's Unfair Competition Law or False Advertising Law, and such claims should be dismissed with prejudice, as no amendment can cure the deficiencies in these claims.

### D. Even if Plaintiff had Pled Viable Claims, each such Claim is Barred by Applicable Statutes of Limitations.

As noted above, Plaintiff was on notice of the manner in which premium payments would be handled—i.e., through the use of level premiums—from the very outset of each transaction.[31]  Accordingly, even if the failure to "optimize" premiums, versus the payment of level premiums, constituted a breach of contract, breach of fiduciary duty, or a violation of California's Unfair Competition Law or False Advertising Law (each of which LPI disputes), such failure was known to Plaintiff as of the date each transaction was concluded, and all such claims are barred by the applicable statutes of limitations.

With respect to Plaintiff's breach of contract and breach of fiduciary duty claims, Texas law provides that a suit on such causes of action must be brought not later than four years after the date on which such causes of action accrue.  *See* Tex. Civ. Prac. & Rem. Code § 16.004(a)(4); *id.* § 16.051; *Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002) ("A party asserting a breach of contract claim must sue no later than four years after the day the claim accrues.  It is well-settled law that a breach of contract claim accrues when the contract is breached."); *see also Taub v. Houston Pipeline Co.*, 75 S.W.3d 606, 618-19 (Tex. App.—Texarkana 2002, pet. denied) (stating that a breach of contract claim accrues "when the contract is breached, or when the claimant has notice of facts sufficient to place him or her on notice of the breach" and that accrual occurs when the wrongful act causes some legal injury "even

---

[31] *See* Section A, *supra*, and n. 21.

if the fact of the injury is not discovered until later and even if all resulting damages have not yet occurred"). Claims for violations of California's Unfair Competition Law are also governed by a four-year statute of limitations. *See* Cal. Bus. & Prof. Code § 17208. And claims for violations of California's False Advertising Law are governed by a three-year statute of limitations. *See* Cal. Civ. Code § 338(a) (providing a catch-all three-year limitation period for statutory actions not encompassed by another statute of limitations); *see also Yumul*, 733 F. Supp. 2d at 1140 ("FAL claims are subject to a three-year statute of limitations.").

Assuming *arguendo* that the agreements required LPI to ensure that the funds placed in escrow for payment of premiums were "optimized" such that only the minimum amount of the cost of insurance was advanced, LPI's "failure" to do so occurred immediately upon the closing of each transaction, and the facts sufficient to place Plaintiff on notice of this "breach" were known to Plaintiff at the moment of the formation of the agreements.[32] As discussed above, each life settlement transaction was based upon the terms and conditions set forth in the Agency Agreement, the specific Policy Funding Agreement for each such transaction, and the accompanying documents that provided the details of the transaction, including the promissory note (for purchases by an IRA), Confidential Case History, Policy Illustration (illustrating the premium obligations for the duration of the life expectancy of the insured), and Policy Information Statement.[33] Those documents reflect the use of level premiums (and not "optimized" premiums) for each such transaction. Thus, as of November 20, 2006, at the latest, Plaintiff was aware of the use of level premiums for each of the five life settlement transactions in which she purchased an interest, the very conduct of which she complains in the instant suit as the basis for her claims.[34] Plaintiff filed her Complaint in the Superior Court of Los Angeles County on November 8, 2011,

---

[32] *See* **Exh B**, at p. 11; **Exh C**, at p. 17; **Exh D**, at p. 23; **Exh E**, at p. 29; **Exh F**, at p. 35 (Policy Illustrations for each purchase reflecting the use of level premiums).
[33] *See* **Exhs A – F.**
[34] November 20, 2006 is the date of the PFA for the last life settlement transaction between Plaintiff and LPI. *See* **Exhs E – F.**

1    nearly **five** years after the accrual of her causes of action.  Accordingly, it is clear from

2    the face of the Complaint and the agreements incorporated by reference therein that

3    Plaintiff's claims are indisputably barred by the three and four year statutes of

4    limitations applicable to her claims.  For this additional reason, Plaintiff's claims

5    should be dismissed with prejudice.

6                                    **V.    CONCLUSION**

7           For the reasons set forth above, Defendant LPI respectfully requests that the

8    Court: (1) grant its motion, dismissing the Complaint in its entirety, with prejudice,

9    and enter judgment in favor of LPI; (2) award LPI its reasonable attorneys' fees and

10   costs incurred in making this motion and defending against this action generally; and

11   (3) grant LPI such other relief as the Court deems just and equitable.

12   Dated: December 16, 2011                    BAKER & McKENZIE LLP

13

14                                              By:  /s/Colin H. Murray
                                                    _____
15                                                  Colin H. Murray
                                                    Attorneys for Defendant
16                                                  Colin.Murray@bakermckenzie

17

18

19

20

21

22

23

24

25

26

27

28